**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSHUA DUDLEY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-523** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **SCI CAMP HILL (PRISON),** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

This matter is before the Court pursuant to Defendants' motion to dismiss or, in the alternative, for summary judgment. (Doc. No. 23.) *Pro se* Plaintiff Joshua Dudley ("Plaintiff") has filed neither a brief in opposition nor a motion seeking an extension of time to do so. Although Defendants have moved for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies prior to initiating the above-captioned case, they have presented no argument in support of this argument in their brief in support and have not filed a statement of undisputed facts as required by Local Rule 56.1. The Court, therefore, will deem Defendants' motion for summary judgment withdrawn and will only consider the motion to dismiss. For the following reasons, the Court will grant in part and deny in part the motion to dismiss.

## I.    BACKGROUND

On April 2, 2020, Plaintiff, who was recently released form the State Correctional Institution Quehanna Boot Camp ("SCI Quehanna") in Karthaus,

Pennsylvania, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against SCI Camp Hill (Prison) and SCI Camp Hill Staff, raising claims regarding various conditions of confinement during his incarceration there. (Doc. No. 1.)  Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Doc. No. 2.)  On April 16, 2020, Plaintiff filed an amended complaint, naming Laurel Harry ("Harry"), John Horner ("Horner"), James Simms ("Simms"), Shawn Kephart ("Kephart"), Keith Carberry ("Carberry"), Tonya Heist ("Heist"), Deb Alvord ("Alvord"), Renee Zobitne ("Zobintne"), Martin Kazar ("Kazar"), Trevor Hardy ("Hardy"), and Marc Houses ("Houses") as Defendants.  (Doc. No. 7.)

In a Memorandum and Order dated April 16, 2020, the Court granted Plaintiff leave to proceed *in forma pauperis*, deemed the amended complaint to be the operative pleading, and dismissed the amended complaint for failure to state a claim upon which relief may be granted.  (Doc. Nos. 10, 11.)  The Court noted that Plaintiff could not maintain his claims against SCI Camp Hill (Prison) and SCI Camp Hill Staff because SCI Camp Hill is not a person subject to suit under § 1983 and because the reference "to 'SCI Camp Hill Staff' is insufficient to impose liability on the entire staff at SCI Camp Hill for purposes of § 1983."  (Doc. No. 10 at 7.)  The Court concluded further that Plaintiff had "not adequate pled facts regarding how the individual Defendants were personally involved in the alleged violations of his

2

constitutional rights" because his use of collective words such as "they" and "them" "fail[ed] to adequately plead which specific Defendant engaged in the specific conduct alleged by Plaintiff." (*Id.* at 11.)  The Court granted Plaintiff leave to file a second amended complaint within thirty (30) days.  (Doc. No. 11.)

The Court received Plaintiff's second amended complaint on May 5, 2020. (Doc. No. 13.)  Plaintiff named SCI Camp Hill Prison as the sole Defendant.  (*Id.* at 1-2.)  In a Memorandum and Order dated May 7, 2020, the Court dismissed Plaintiff's second amended complaint, again noting that Plaintiff could not maintain his claims against SCI Camp Hill.  (Doc. Nos. 14-15.)  The Court granted Plaintiff leave to file a third amended complaint with respect to his constitutional claims as set forth against individuals at SCI Camp Hill within thirty (30) days.  (*Id.*)

Plaintiff filed his third amended complaint on May 20, 2020.  (Doc. No. 16.) In it, he names Harry, Horner, Simms, Kephart, Carberry, Zobitne, Kazar, Hardy, and Officer Woods ("Woods") as Defendants.  (*Id.* at 2-3.)  Plaintiff's third amended complaint raises a litany of claims concerning his conditions of confinement while incarcerated at SCI Camp Hill.  Plaintiff alleges that in November of 2019, he discovered that he had several bedbug bites.  (*Id.* at 4-5.)  Plaintiff asked Defendant Woods if he could go see a nurse in the medical department.  (Doc. No. 16-1 at 1.) Defendant Woods told Plaintiff to submit a medical slip.  (*Id.*)  Plaintiff told him that

it was a "serious medical need," and Defendant Woods told him that he could not do anything about it. (*Id.*) Plaintiff submitted a medical slip and alleges that he did not see medical until three (3) weeks later, when he had already been moved to a new cell with no bedbugs. (*Id.*)

Plaintiff maintains further that his new cell had no heat because the heater was broken. (*Id.*) He asked Defendant Woods if the heat could be fixed, and Defendant Woods replied that he could not do anything. (*Id.*) Plaintiff submitted a grievance and alleges that when Defendant Woods learned of the grievance, he refused to open Plaintiff's cell for lunch time. (*Id.*)

Plaintiff alleges that Defendant Harry and Horner came to A-Block to "look around" because of inmates' complaints about the conditions and the heat not working. (*Id.* at 2.) The inmates asked if they could be moved to a new block; Defendants Harry and Horner said that was not possible. (*Id.*) Plaintiff indicated that would sue. (*Id.*) Subsequently, Plaintiff tried to sign up to go to the law library, and Defendant Woods told him that Defendants Harry and Horner had stated that Plaintiff could not go to the law library because of his statement that would sue. (*Id.*) Plaintiff submitted another grievance. (*Id.*)

Plaintiff's third amended complaint also alleges several unhealthy conditions of confinement at SCI Camp Hill. (*Id.*) He maintains that there was poor ventilation,

rust all over the walls, and that the housing blocks smelled like urine, vomit, and feces. (*Id.*) Plaintiff asserts that he and other inmates were not allowed to shower "half of the time" and that when they could, they were only provided two (2) to three (3) minutes to do so. (*Id.*) Plaintiff also complained that his toilet would overflow at times. (*Id.* at 3.) When Plaintiff asked Defendant Woods if he could clean up the overflow, Defendant Woods told him to wait. (*Id.*) Plaintiff alleges that he waited for two (2) hours while his cell was "full with feces and urine." (*Id.*) Plaintiff complained to Defendants Harry, Horner, and Woods. (*Id.*) Eventually, Plaintiff was moved to a new cell. (*Id.*) Plaintiff alleges further that Defendants Harry, Horner, and Woods did not let him to go religious services because Plaintiff said that he was going to sue. (*Id.*) Plaintiff asked Defendants Simms, Kephart, and Carberry for help and to see if he could be moved to a new housing block. (*Id.*) He also asked how he could go to religious services and the law library. (*Id.*) Plaintiff alleges that Defendants Simms, Kephart, and Carberry told him that he was not following the rules and had submitted too many grievances. (*Id.*) According to Plaintiff, they ripped up all of his grievances. (*Id.*)

Plaintiff goes on to allege that his commissary and Bible were taken from his cell and thrown out. (*Id.* at 4.) Plaintiff maintains further that he did not receive clean clothes and did not get to do laundry for a month. (*Id.*) He also was unable to

clean his cell and had trouble breathing because of the dust. (*Id.*) Plaintiff asserts that the cold water in his cell was brown and that when he asked Defendant Woods if it could be fixed, Defendant Woods refused because of Plaintiff's threats to sue. (*Id.*) Plaintiff further alleges that the water in his cell was shut off for two (2) to three (3) days and was very dehydrated. (*Id.*)

Plaintiff also mentions that SCI Camp Hill was infested with pests such as mice, bedbugs, and roaches. (*Id.*) When he complained, Defendants Zobitne and Kazar told him that he was causing trouble and threatened to place Plaintiff "in the hole" if he filed a lawsuit. (*Id.* at 5.) Plaintiff alleges that they also retaliated against him by "not making [any] phone calls to [his] family or [girl] to tell them what's going on." (*Id.*) Plaintiff alleges further that Defendant Hardy and Marc Houses threw away his legal mail because of Plaintiff's threat to sue. (*Id.*) He maintains further that at times they withheld his mail for two (2) weeks or more. (*Id.*) Finally, Plaintiff avers that he was denied soap. (*Id.*) As relief, Plaintiff seeks $5 million in damages. (*Id.* at 6.)

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences

that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded

factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).   A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed."   *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976).  A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B.     Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  *See* 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a

9

right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

Defendants seek dismissal of Plaintiff's third amended complaint for the following three (3) reasons: (1) the third amended complaint is a "shotgun pleading" that violates Rule 8 and 10 of the Federal Rules of Civil Procedure; (2) the third amended complaint should be dismissed with prejudice pursuant to *Poulis*[1] and Rule 41(b) of the Federal Rules of Civil Procedure; and (3) Plaintiff has failed to state plausible claims for relief.  (Doc. No. 24 at 6.)  The Court considers each argument in turn below.

### A.      Compliance with Federal Rules of Civil Procedure 8 and 10

Defendants first argue that Plaintiff's third amended complaint "should be dismissed as a shotgun pleading because it fails to afford Defendants adequate notice of the claims being brought against them."  (Doc. No. 24 at 7.)  Defendants fault Plaintiff for failing to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  (*Id.* at 8.)  The Court, however, disagrees with Defendants.

Rule 8 requires that a complaint contain a "short and plain statement of the

---

[1] *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984).

claim showing that the pleader is entitled to relief."   Fed. R. Civ. P 8(a)(2).

Moreover, allegations should be "simple, concise, and direct."   Fed. R. Civ. P

8(d)(1).   Rule 10 provides that a "party must state its claims or defenses in numbered

paragraphs, each limited as far as practicable to a single set of circumstances."   Fed.

R. Civ. P. 10(b).   A statement of a claim "should be plain because the principal

function of pleadings under the Federal Rules is to give the adverse party fair notice

of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin*

*v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).   Moreover, "[t]he statement should be

short because '[u]nnecessary prolixity in a pleading places an unjustified burden on

the court and the party who must respond to it because they are forced to select the

relevant material from a mass of verbiage.'" *Id.* (second alteration in original)

(quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*

§ 1281, at 365 (1969)).   Whether the "short and plain statement" requirement is

satisfied is a "context-dependent exercise." *W. Penn Allegheny Health Sys., Inc. v.*

*UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).   Dismissal for failure to comply with Rule

8 is usually "reserved for those cases in which the complaint is so confused,

ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well

disguised." *Simmons v. Abruzzio*, 49 F.2d 83, 96 (2d Cir. 1995) (quotations omitted).

The Court disagrees with Defendants that Plaintiff's third amended complaint

"nonetheless persists in requiring a yeoman's effort to even begin to understand the grounds upon which Plaintiff seeks to impose liability against the Defendants." (Doc. No. 24 at 7.)  This is not a case where dismissal is required because the third amended complaint is so vague and unintelligible.  *See Simmons*, 49 F.2d at 96. While Defendants are correct that Plaintiff has not utilized numbered paragraphs, it is clear that Plaintiff's third amended complaint raises claims against Defendants for alleged violations of his First and Eighth Amendment rights.   Contrary to Defendants' arguments, the third amended complaint does not impose an "unjustifiable burden upon Defendants to cull out and speculate as to each cause of action asserted and the factual allegations underlying the same."  (Doc. No. 24 at 9.) The Court, therefore, will not dismiss Plaintiff's third amended complaint for failure to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

### B.    *Poulis* **and Rule 41(b) of the Federal Rules of Civil Procedure**

Defendants next argue that dismissal of Plaintiff's third amended complaint with prejudice is warranted pursuant to Rule 41(b) after application of the factors set forth in *Poulis*.  Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action for "failure of the plaintiff to prosecute or comply with these rules or order of court."  *See* Fed. R. Civ. P. 41(b).  When determining whether to dismiss an action for a plaintiff's failure to prosecute under Rule 41(b), the Court must balance six (6)

12

factors set forth in *Poulis v. State Farm Fire and Casualty Company*, 747 F.2d 863

(3d Cir. 1984).  These factors include:

> (1) the extent of the party's personal responsibility; (2) the prejudice to
> the adversary caused by the failure to meet scheduling orders and
> respond to discovery; (3) a history of dilatoriness; (4) whether the
> conduct of the party or the attorney was willful or in bad faith; (5) the
> effectiveness of sanctions other than dismissal, which entails an
> analysis of alternative sanctions; and (6) the meritoriousness of the
> claim or defense.

*Id.* at 868.  Not all of the *Poulis* factors must be satisfied in order for a court to

dismiss a complaint.  *See Shahin v. Delaware*, 345 F. App'x 815, 817 (3d Cir. 2009);

*Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).

Upon consideration of these factors, the Court does not agree with Defendants

that dismissal of Plaintiff's complaint pursuant to Rule 41(b) is warranted.

Defendants fault Plaintiff for failing to follow the Court's previous Orders in this

case because he "persists in his use of generic pronouns instead of specific

identifications of individuals."  (Doc. No. 24 at 10.)  While Plaintiff does use

pronouns at times, the Court disagrees with Defendants that Plaintiff has completely

failed to follow this Court's directives regarding his third amended complaint.

Defendants also assert that the second factor is satisfied because they are prejudiced

by "an unjustifiable burden to call out and speculate as to each cause of action

asserted, and the factual allegations underlying the same, or risk a failure to

respond." (Doc. No. 24 at 11.) The Court disagrees. Although portions of the third amended complaint may be somewhat unclear or lacking in particularity, the Court does not find that it is so vague, ambiguous, or unintelligible that Defendants cannot respond to it in good faith. Finally, Defendants suggest that the fourth factor is satisfied because Plaintiff's failure to abide by Court Orders demonstrates a willful disregard for such. (*Id.* at 11-12.) Again, the Court disagrees. Given Plaintiff's *pro se* status, coupled with the fact that he was incarcerated when he initiated the above-captioned case, the Court concludes that Plaintiff's third amended complaint represents a good faith effort to comply with the Court's previous directives. AS noted *supra*, a *pro se* document must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines*, 404 U.S. at 520-21. The Court, therefore, will not dismiss Plaintiff's third amended complaint with prejudice pursuant to *Poulis* and Rule 41(b).

### C.   Plausibility of Plaintiff's Claims

Finally, Defendants seek dismissal on the basis that Plaintiff's third amended complaint does not set forth plausible claims for relief under the First and Eighth Amendments. (Doc. No. 24 at 12-15.) The Court discusses such claims below.

14

### 1.     First Amendment Retaliation Claims

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.

1997).  The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.  "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422.  If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

In the instant case, Plaintiff alleges that Defendant Woods retaliated against him for filing a grievance by denying him lunch on at least one occasion.  (Doc. No. 16-1 at 1.)  He also suggests that Defendants Harry and Horner denied him the use of the law library for filing grievances and threatening to sue.  (*Id.* at 2.)  Plaintiff asserts further that Defendants Harry, Horner, Woods, Simms, Kephart, and Carberry retaliated against him for threatening to sue by not allowing him to attend religious services.  (*Id.* at 3.)  He also maintains that Defendant Hardy retaliated

16

against him for threatening to sue by throwing away his mail and delaying his receipt of mail.  (*Id.* at 5.)  Finally, Plaintiff suggests that Defendants Zobitne and Kazar retaliated against him for filing grievances and threatening to sue by prohibiting phone calls.  (*Id.*)

Defendants argue that dismissal of Plaintiff's retaliation claims is necessary because "Plaintiff omits any and all factual material which could support these conclusory allegations, [as well as] any factual material identifying the number, date, content, or individuals identified within said grievances."  (Doc. No. 24 at 12-13.) Defendants argue further that Plaintiff fails to reference "any temporally proximate protected activities."  (*Id.* at 13.)  In light of Plaintiff's allegations, the Court concludes that Plaintiff has set forth plausible First Amendment claims at this time. *See Coit v. Luther*, No. 1:19-cv-2036, 2020 WL 4260765, at *7 (M.D. Pa. July 24, 2020).  Defendants will have the opportunity to obtain more details regarding Plaintiff's retaliation claims during the discovery process.  Accordingly, the Court will deny the motion to dismiss with respect to Plaintiff's First Amendment retaliation claims.

### 2.    Eighth Amendment Claims

Eighth Amendment claims have both objective and subjective components. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is

17

required to satisfy the Eighth Amendment's objective component. *Id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Id.* The Court construes Plaintiff's third amended complaint to raise Eighth Amendment claims regarding medical care as well as the conditions of confinement at SCI Camp Hill.

### a.   Medical Care Claim

The objective component of an Eighth Amendment medical care claim, *i.e.*, whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1 (1992). A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *Monmouth Cty. Corr. Institution Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *West v. Keve*, 571 F.2d 158, 162-63 n.6 (3d Cir. 1978). The serious medical need element contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain. *See Lanzaro*, 834 F.2d at 347.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those [individuals who are] incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish a claim under § 1983 based on the Eighth

Amendment, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004), *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *Farmer*, 511 U.S. at 837. Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation, nor can disagreements over a prison physician's medical judgment. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990). Thus, this standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Little v. Lycoming Cty.*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). For example, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107. "[A]s long as a physician exercises professional judgment his behavior

will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).  In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "Grossly negligent behavior, however, can constitute deliberate indifference as can a doctor's choice to take an 'easier and less efficacious course of treatment' in response to a serious medical need." *James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007) (quoting *Lanzaro*, 834 F.2d at 347).

In the instant case, Plaintiff appears to allege that Defendant Woods denied him medical care for bedbug bites.  (Doc. No. 16-1 at 1.)  Defendants argue that this condition fails to satisfy the objective prong of an Eighth Amendment claim.  (Doc. No. 24 at 14.)  This Court has previously concluded that bedbug bites do not constitute serious medical needs sufficient to demonstrate deliberate indifference for purposes of an Eighth Amendment claim. *See Hughes v. Miskell*, No. 3:10-cv-1443, 2011 WL 7561387, at *10 (M.D. Pa. Jan. 10, 2011), *Report and Recommendation adopted*, 2012 WL 928428 (M.D. Pa. Mar. 19, 2012); *see also Browning v. Crabtree*, No. 10-1414-AC, 2011 WL 310208, at *2 (D. Or. Jan. 27, 2011) (concluding that while "a bed bug infestation may be unfortunate," the plaintiff's allegations that he

had "bed bug bites all over his body" did not support a finding that the defendants were "forcing him to live in conditions of squalor posing a serious threat to [his] health"). While the Court understands that bedbug bites may be "undoubtedly inconvenient and uncomfortable," they are "common among non-incarcerated citizens and do[] not rise to the level of a serious medical need." *See Roberts v. Dawalibi*, No. 14 C 4719, 2017 WL 926772, at \*6 (N.D. Ill. Mar. 8, 2017). Moreover, Plaintiff's third amended complaint fails to plausibly allege that Defendant Woods denied him medical care because Plaintiff explicitly states that Defendant Woods told him to submit a medical slip. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim concerning the denial of medical care.

### b.    Conditions of Confinement Claims

In order to state an Eighth Amendment claim as to one's conditions of confinement, a plaintiff must allege that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015). Conditions of confinement violate the Eighth Amendment if they, "alone or in combination . . . deprive inmates of the minimal

21

civilized measures of life's necessities." *Id.* at 347.  Such necessities include "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "Courts have stressed the duration of the exposure to the alleged unconstitutional conditions and the 'totality of the circumstances' as critical to a finding of cruel and inhumane treatment." *Lloyd v. Barr*, No. 4:20-cv-1107, 2020 WL 5076065, at *3 (M.D. Pa. Aug. 27, 2020) (citation omitted).

Plaintiff's third amended complaint includes a litany of allegations concerning conditions at SCI Camp Hill while he was incarcerated there.  As noted above, Plaintiff alleges that during November and December of 2019, he was housed in cells with no heat, poor ventilation, and infestations of mice, roaches, and bedbugs. He also alleges that he was denied food on at least one occasion.  Plaintiff maintains further that SCI Camp Hill had poor ventilation and that the dust caused him breathing difficulties.  He suggests that he was forced to remain a cell for two (2) hours after the toilet had overflowed and that he and other inmates had minimal access to showers.  Plaintiff asserts that he was denied clean clothing and the ability to clean his cell.  He also mentions a lack of soap.

Defendants argue that dismissal of Plaintiff's claims is appropriate because he as "ascertained only 'conditions' which fail to satisfy the objective prong."  (Doc. No. 24 at 14.)  However, "[s]ome conditions of confinement may establish an Eighth

Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 924 F.3d 368, 373-74 (3d Cir. 2019) (quotations omitted). At this point, given the litany of conditions alleged by Plaintiff, the Court concludes that he has set forth sufficient allegations to satisfy the objective prong of an Eighth Amendment conditions of confinement claim. Moreover, Plaintiff has plausibly alleged that Defendants demonstrated deliberate indifference to his conditions by noting that he repeatedly advised them of such to no avail. Accordingly, the Court will deny Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment conditions of confinement claims.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 23) will be deemed withdrawn. Defendants' motion to dismiss (Doc. No. 23) will be granted in part and denied in part. The motion will be granted with respect to Plaintiff's Eighth Amendment medical care claim and denied in all other aspects. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: October 5, 2020